UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

        Plaintiff,

                                        File No.  1:05-CR-160

v.

                                        HON. ROBERT HOLMES BELL

JOSHSHAN CHILDS,

        Defendant.

_____/


**O P I N I O N**

Defendant Joshshan Childs was indicted on one count of conspiracy to use and use of interstate commerce facilities in the commission of a murder-for-hire in violation of 18 U.S.C. § 1958.  This matter is currently before the Court on Defendant Childs' motion to suppress statements made on August 27, 2002.

**I.**

Childs moves to suppress his statement pursuant to 18 U.S.C. § 3501 because it was not voluntarily made, or, in the alternative, because he did not make a knowing, voluntary and intelligent waiver of his rights as required by *Miranda v. Arizona*, 384 U.S. 436 (1966).

A confession, defined as "any confession of guilt of any criminal offense or any self-incriminating statement," 18 U.S.C. § 3501(e), is admissible in evidence if it is voluntarily made. 18 U.S.C. § 3501(a).  Before a confession is received in evidence "the trial judge  shall, out of the presence of the jury, determine any issue as to voluntariness."  18 U.S.C. § 3501(a).  When a defendant challenges the voluntariness of a confession, the government must prove voluntariness by

a preponderance of the evidence.  *Lego v. Twomey*, 404 U.S. 477, 489 (1972); *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir. 1992).

In determining the issue of voluntariness the court should consider all of the surrounding circumstances including the following:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

If the government relies on a defendant's waiver of his *Miranda* rights, the burden is on the Government to show, by a preponderance of the evidence, that the defendant validly waived those rights.  *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  To be valid, the waiver must be made "voluntarily, knowingly and intelligently."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Miranda*, 384 U.S. at 444). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

## II.

At the evidentiary hearing on December 15, 2006, the government presented the testimony of Benton Township Detective Carl DeLand.  Defendant Childs did not offer any witnesses or

evidence.  The Court found the testimony of Detective DeLand to be credible.  The Court's findings

of fact are accordingly based upon his unrebutted testimony.

On August 27, 2002, Defendant Joshshan Childs was incarcerated at the Telfair State Prison

in Helena, Georgia, on state charges.  FBI Special Agent Al DeBrito and Benton Township Detective

Carl DeLand went to Telfair State Prison to interview Childs about the death of Chrissy Satterfield

some six years before.

At approximately 10:00 a.m. Childs was brought to an interview room that was separated

from the prison population.  Agent DeBrito and Detective DeLand introduced themselves and

advised Defendant Childs that they were there to discuss Childs' involvement in the Chrissy

Satterfield murder.

DeLand read Childs his Miranda warnings from a card and gave Childs the rights card to

read.  DeLand then asked Childs if he understood each of the rights and whether he wanted to talk.

Childs responded affirmatively to both questions.  Childs signed "Childs, Joshshan" on the bottom

of the Miranda waiver of rights card.  After Childs signed the waiver, DeLand and DeBrito began

questioning him about the Satterfield murder.  DeLand took notes of the interview, but the interview

was not electronically recorded.

According to DeLand, Childs appeared to be oriented as to time and place, and he did not

appear to be tired or ill.  He appeared to understand the questions asked.  Neither DeLand nor

DeBrito used any threats or physical force against Childs, nor did they offer him any promises or

bribes.  Childs did not request that the interview be recorded nor did he request counsel.

Toward the end of the interview Childs asked what penalties he would be looking at if he

were charged with murder.  DeBrito told him that he could not predict what he would get, but that

he could be facing anything as high as death, life, or a term of years, possibly twenty years.  That was the end of the interview.

### III.

At the time Childs was questioned by Agent DeBrito and Detective DeLand he was in custody, he was subject to interrogation, and he was without the assistance of counsel.  The unrefuted facts also indicate that he was advised of the nature of the offense that he was suspected of being involved in, he was advised that he was not required to make a statement, he was advised that any statement could be used against him, he was advised that he had a right to the assistance of counsel, and he was advised that he could decide at any time not to answer any questions.

Childs contends that the government has not established that his statement was voluntary under the totality of the circumstances.  Childs has requested the Court to focus particularly on the coercive atmosphere of the prison, the manner in which the waiver was obtained, the timing of the waiver, the failure to electronically record the interview, the lack of representation, and the false promise of leniency.

Although the *Miranda* rights were read together, and not one by one, they were not confusing.  The Court is aware of no case law requiring each right to be inquired into separately. Furthermore, Childs had an opportunity to read the rights on his own before signing the waiver.

Childs contends that without a recording, it is impossible to tell whether he was fully explained his rights before he began speaking with investigators.  The Court found Detective DeLand's testimony that the rights were read and the waiver obtained before the interview to be credible, and there was no contrary evidence to suggest that Childs did not waive his *Miranda* rights at the beginning of the interview.

4

The lack of an electronic recording does not cause this Court to question the timing of the waiver. There is no constitutional right to have custodial interrogations and confessions electronically recorded. *See United States v. Dobbins*, No. 96-4233, 1998 WL 698717 *4 (unpublished) (citing *United States v. Coades*, 549 F.2d 1303 (9th Cir. 1977)). Testimony that the defendant confessed is not subject to suppression merely because it was not recorded. *Id. See also Reinert v. Larkins*, 379 F.3d 76, 94 n. 4 (3rd Cir. 2004) (declining to infer a federal right to have custodial interrogations recorded). Moreover, Childs has not suggested how the lack of a recording would implicate the voluntariness of his statement.

There was no evidence that the officers made any false promises of leniency. Agent DeBrito mentioned a twenty year sentence as one of several possible penalties, along with the death penalty and life in prison. He did not promise a particular sentence. Moreover, the discussion regarding potential penalties occurred at the conclusion of the interview, after Childs had already made statements about Chrissy Satterfield, so the penalty discussion could not have influenced Childs' decision to make those statements.

The mere fact that the interview took place in a prison is not sufficient to suggest that it was unduly coercive. The interview was conducted in a private room that was separate from the inmate population. That setting was no more coercive than a conference room of a police station. The fact that Childs signed the *Miranda* waiver with his last name first, without more, does not suggest that his will was overborne by the prison environment.

Although the officers arrived without warning six years after the murder to interrogate Childs, and although Childs did not have an opportunity to consult with counsel before their arrival, Childs waived his right to counsel. There was no evidence that Childs was unable to comprehend

5

his *Miranda* rights or the nature of the interview.  There was no evidence that his decision to waive counsel and to answer questions was coerced by promises, threats, or force.  In the absence of evidence of some other coercive factors, the Court does not find that the factors of delay and lack of notice were sufficient to overcome Childs' ability to thoughtfully consider his waiver of his right to counsel.

There is simply nothing on this record to suggest that Childs' waiver and statements were not voluntarily, knowingly and intelligently made.  Accordingly, Childs' motion to suppress will be denied.

An order consistent with this opinion will be entered.


Date:    December 21, 2006                /s/ Robert Holmes Bell
                                          ROBERT HOLMES BELL
                                          CHIEF UNITED STATES DISTRICT JUDGE